UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : CR No. 07-122 ML

DOMINGO ENRIQUE LORENZO-FERRERA :

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant hereby submits to the court the following memorandum in support of a sentence that varies from the sentence called for by the United States Sentencing Guidelines.

**1. This Court may impose a sentence lower than that called for by application of U.S.S.G. § 2L1.2 as the sentencing range in this case does not represent the Sentencing Commission's empirical judgment.**

Mr. Domingo Lorenzo-Ferrera faces a sentencing range of between 41 and 51 months. PSR at ¶ 45. Mr. Lorenzo-Ferrera's offense level, before a three point reduction for acceptance of responsibility, was calculated at level 24. PSR at ¶ 23. The offense level of 24 is driven by the 16 point increase resulting from Mr. Lorenzo-Ferrera's 21 year old cocaine distribution conviction. PSR at ¶ 17.

In Kimbrough v. United States, __U.S. __, 128 S. Ct. 558, 169 L.Ed.2d 481 (2007), the Supreme Court held that, under United States v. Booker, 543 U.S. 220, 244 (2005), a district court could consider the crack/powder disparity in considering the objectives of sentencing outlined in 18 U.S.C. § 3553(a).

The Supreme Court reviewed the history of the crack cocaine guidelines in light of

the Sentencing Commission's statutory mission.

> In the main, the Commission developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including about 10,000 presentence investigation reports.

Kimbrough, *supra*, 128 S. Ct., at 567.

______The Supreme Court noted that in creating the guidelines for drug trafficking offenses, the Commission did not utilize an empirical analysis.

> In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of "empirical data and national experience" (Citation omitted).

Id., 128 S. Ct., at 575.

In a similar fashion, U.S.S.G. § 2L1.2 does not reflect any empirical data. An examination of the history of the amendments to Section 2L1.2 reveals that there is no objective reason for imposing a 16 level increase for a drug conviction where the defendant received over thirteen months in prison.

The 16 level increase for aggravated felonies was first introduced in 1991. See U.S.S.G. App. C, Amend. 375 (1991). In the text of Amendment 375, the only justification for the 16 level increase was the following statement: "The Commission has determined that these increased offense levels are appropriate to reflect the serious nature of these offenses." U.S.S.G., App. C Amend. 375 (1991) (Copy attached as Exhibit A).

In 2001, Section 2L1.2 was again amended to provide a number of steps between level 6 and level 24. See U.S.S.G. App. C, Amend 632 (2001). While Amendment 632 did provide

for what the Commission described as "a more graduated sentencing enhancement of between 8 and 156 levels",[1] the Commission did not base the amendments in any empirical data. (Copy of Amendment 632 attached as Exhibit B).

Simply stated, the 16 point offense level increase in this case results from not from the Commission's empirical analysis but from an unsupported determination that 16 levels is the appropriate increase for defendants like Mr. Lorenzo-Ferrera. As a result, under Kimbrough v. United States, s*upra*, and 18 U.S.C. § 3553(a), this court may make a variance from the sentence called for by the Guidelines based on the harshness of the sentence.

**2. Consideration of 18 U.S.C. § 3553(a) weighs in favor of a sentence that varies from the guidelines.**

**A) Defendant's history and characteristics**.

Mr. Lorenzo-Ferrera re-entered the United States to assist in the care of his ailing mother. This fact was confirmed by the Pre-Sentence Report. See PSR at ¶ ¶ 34, 41. In an effort to provide the court with more details concerning the motivation for Mr. Lorenzo-Ferrera's re-entry to the United States, defense counsel obtained a letter from his family. The letter is attached as Exhibit C. This letter describes in detail while Mr. Lorenzo-Ferrera returned to the United States. Since his return, he has no arrests other than the arrest in the instant case.

**B) Seriousness of the offense**, **need for deterrence**

Defense counsel acknowledges that the crime of illegal re-entry is a serious crime. The United States has a strong interest in protecting its borders. The imposition of some term of imprisonment is sufficient to serve to deter the defendant, and others, from committing the crime

[1] U.S.S.G. Append. C, Amend. 632 (2001).

of illegal re-entry.

**C) Need for treatment.**

From the Pre-Sentence Report, it is clear that Mr. Lorenzo-Ferrera is not in need of extensive treatment. He has no alcohol or drug problem. Further, he does not suffer from any mental health history. While he would benefit from educational and vocational programming, he will not have any opportunity to use such skills in the United States as he will be deported following completion of his sentence.

______**D) Lack of a "fast track program" in the District of Rhode Island.**

______The court should consider the lack of a "fast track" program in the district of Rhode Island. See United States v. Galvez-Barrios, 355 F.Supp. 2d 958 (E.D. Wis. 2005) (imposing below guideline sentence in part to account for fast-track program).

The United States Sentencing Commission itself has recognized that the lack of uniform policies nationwide in terms of "fast track" programs results in longer sentences. The Commission noted, "[d]efendants sentenced in districts without authorized [fast-track] programs . . . can be expected to receive longer sentences . . . . This type of geographical disparity appears to be at odds with the . . . goal of reducing unwarranted sentencing disparity[.] " [2]

**E) Defendant's inability to benefit from rehabilitative programs while in Bureau of Prisons custody.**

Many courts have recognized that non-citizen defendants incarcerated by the Bureau of

---

[2] United Sentencing Commission, Report to the Congress: *Downward Departures From The Federal Sentencing Guidelines,* 66=67 (Oct. 2003), available at http://www.ussc.gov.departrpt03.

Prisons have considerably less access to rehabilitative services.[3] In essence, defendants like Mr. Lorenzo-Ferrera are simply warehoused by the Bureau of Prisons until their certain deportation. Although, as set forth above, Mr. Lorenzo-Ferrera is not in need of alcohol, drug or mental health treatment, he would not have as much access to job training and education as would a United States citizen.

**F) Sentencing recommendation of defense counsel.**

Defense counsel, in light of the foregoing, defense counsel would urge the court to impose a sentence of eighteen (18) months. In view of the various factors listed in 18 U.S.C. § 3553(a), a sentence of eighteen (18) months would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
(401) 528 - 4281
Edward_Roy@fd.org

---

[3] See United States v. Navarro-Diaz, 420 F. 3d 581 (6th Cir. 2005) ( Case remanded in light of *Booker* where district court had expressed some concern that defendant would be subject to more severe sentence as he was ineligible for six month half way house); United States v. Davoudi, 172 F. 3d 1130 (9th Cir. 1999) (District court had discretion to depart because defendant facing deportation could not take advantage of six months home confinement provided by 18 U.S.C. § 3624( c ) ); United States v. Pacheco-Soto, 386 F.Supp.2d 1198, 1205 (D.N.M. 2005)(In drug case, below guidelines sentence imposed where district court recognized that the defendant would face more severe confinement because of ineligibility for early release, minimum security classification and drug program).

**CERTIFICATION**

I hereby certify that I caused a copy of the within motion to be served upon Peter Neronha, AUSA on the 7th day of April, 2008 by way of ECF case filing.

/s/ Edward C. Roy, Esquire